# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOSEPH P. BETTENCOURT,

    **Plaintiff,**

vs.                                                                                                                 Civ. No. 00-1662 BB/RLP

JO ANNE B. BARNHART[1],
Commissioner of Social Security,

    **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[2]

1.     Plaintiff, Joseph P. Bettencourt, ("Plaintiff" herein), seeks to reverse the Commissioner's denial of his application for Supplemental Security Income (SSI) under title XVI of the Social Security Act. His application was denied at the first and second levels of administrative review and by an Administrative Law Judge[3] (ALJ herein). The Appeals Council declined to review the ALJ's decision on October 31, 2000.

2.     The matter before the Court is Plaintiff's Motion to Reverse the decision of the Commissioner of Social Security denying his claim. Although represented by counsel at the administrative level, Plaintiff has filed his complaint in this Court *pro se*. The courts will construe *pro se* pleadings

---

[1] JoAnne Barnhart, the new Commissioner of Social Security, is automatically substituted as the defendant for Larry Massanari, the former Acting Commissioner of Social Security, pursuant to Fed.R.Civ.P. 25(d).

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

[3] Plaintiff's administrative hearing was held in Alaska, where he was then living. (Tr. 34).

liberally so as to do substantial justice. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L. Ed.2d 652 (1972). See also Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (court will construe plaintiff's pleadings liberally and hold them to a less stringent standard than pleadings by attorneys.) The courts will still require the plaintiff to allege sufficient facts to support a legal claim. Id.

**I.    Standard of Review**

3.     This Court reviews the Commissioner's decision to determine whether the records contain substantial evidence to support the findings, and to determine whether the correct legal standards were applied. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Soliz v. Chater, 82 F.3d 373, 375 (10th Cir.1996) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).[4] In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. Dollar v. Bowen, 821 F.2d 530, 532 (10th Cir.1987).

4.     The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant through step four; then it shifts to the Commissioner. Id.

---

[4]The standard for substantial evidence utilized by the Ninth Circuit, where Plaintiff's administrative proceeding occurred, is nearly identical: "Substantial evidence must be more than a scintilla, but need not amount to a preponderance." Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

**II.     Vocational and Medical Facts**

5.     Plaintiff was 45 years of age at the time of the ALJ's decision denying his claim. He has a college education with additional vocational training in computer programing. He has previously worked as a janitor, construction laborer, painter, furniture mover, landscaper and roofer. (Tr. 110). He has not engaged in substantial gainful work activity since his alleged date of onset of disability.

6.     Plaintiff contends that he has been disabled since November 1, 1997, due to sequellae from a closed head injury suffered in 1985.[5] He testified he was unable to afford medical care for fifteen years after this accident. The first record of evidence of subsequent medical care documents a December 8, 1997, evaluation by Dr. Grandstaff, a family practitioner in Fairbanks Alaska, in connection with Plaintiff's application for public assistance. (Tr. 175, 214). Plaintiff gave a history of having been disabled due to organic brain syndrome following his 1985 auto accident, and also indicated that he had been involved in another accident in 1995, when he was hit by a truck while riding a bicycle. (Tr. 175). Plaintiff complained of difficulty holding a job because he was easily frustrated, anxious, had tension headaches when he worked and episodes of diarrhea and constipation brought on by stressful situations. Dr. Grandstaff could recall no abnormalities on physical examination when he dictated his office note. He provided Plaintiff with information on irritable bowel syndrome, recommended using antidepressant medication to help with anger and irritability, and vocational, occupational and physical therapy. Id. Dr. Grandstaff subsequently noted that Plaintiff qualified "for a general medical relief program due to chronic mental illness (organic brain syndrome secondary to 1985 head injury). (Tr. 175)."

---

[5]Plaintiff sustained a severe cerebral concussion, possible cerebral contusion and numerous lacerations in an automobile accident. (Tr. 148-151).

7.      Plaintiff returned to Dr. Grandstaff on January 19, 1998, complaining of persistent but not severe headaches, difficulty concentrating and continued irritability. His physical examination was essentially normal.[6] Dr. Grandstaff prescribed *Wellbutrin S.R.*, an antidepressant. Id.

8.      Plaintiff returned for follow-up evaluation of his affective disorder on February 18, 1998, and was seen by Hunter Judkins, M.D. He stated that he had stopped taking *Wellbutrin* after one week because it had not improved his symptoms and interfered with his ability to sleep, a problem he had not had previously. (Tr. 173). On physical examination, Dr. Judkins noted hypertension, a slight odor of alcohol and flat affect. He diagnosed Affective Disorder, possibly related to his prior head injury, and changed Plaintiff's antidepressant medication to *Paxil*, asking him to return in two to three weeks, or sooner if his symptoms worsened.

9.      On March 3, 1998, Plaintiff was evaluated Dr. William Carroll, a psychiatrist, at the request of the Disability Determination Unit. (Tr. 177-181). Plaintiff stated that he had quit working the prior December because he was tense, irritable, anxious, unable to concentrate and in constant pain, and that he had stopped taking *Paxil* due to unlisted side effects. Dr. Carroll recorded a detailed history which included Plaintiff's prior legal and alcohol problems and desire to obtain vocational training so that he could work in a job that did not require heavy labor. Dr. Carroll conducted and recorded detailed mental status exam. Based on the interview and exam, he diagnosed Plaintiff as suffering from Alcohol Dependence in full partial remission (Axis I), Depressive Disorder NOS (Axis I) and Antisocial Personality Disorder (Axis II). (Tr. 180). Dr. Carroll indicated that Plaintiff had disabilities consisting of irritability, difficulty concentrating, self imposed isolation and constant vague

---

[6]Dr. Grandstaff noted multiple neurofibromas of the upper extremities. Plaintiff has not alleged any disability caused by this condition.

4

pains throughout his body. (Tr. 181). He did not prepare a mental residual functional capacity form evaluating the severity of these conditions.

10.     A psychiatric review technique form was prepared by an agency physician from a review of the medical records on March 10, 1998. (Tr. 182-194). In that evaluation, Plaintiff was assessed as having slight restriction in activities of daily living, slight/moderate difficulties maintaining social functioning, and seldom/often deficiencies of concentration, persistence or pace. There was insufficient evidence of episodes of deterioration at work or in work like setting. (Tr. 189). The evaluator also prepared a mental functional capacity assessment which indicated slight to moderate limitations in specific areas.[7] The evaluator indicated that these limitations were based on history not on historical records substantiating the severity of Plaintiff's impairment, adding "he claims to be able to work when it is necessary." (Tr. 192).

11.     Plaintiff was evaluated by Dr. Todd at the Interior Department Health Clinic on June 24, 1998, complaining of muscle and joint pain, lower abdominal pain, nausea, diarrhea, and anxiety. (Tr. 200-201). His physical examination was essentially unremarkable except for a hernia and neurofibromatosis. Dr. Todd prescribed a two-week supply of *Flexeril*, to be taken at night, and scheduled a follow-up visit in two weeks. When he returned to the Clinic on July 7, 1998, Plaintiff was evaluated by a Dr. Carpenter. He indicated that anxiety worsened his pain, that he was sleeping okay and eating well. He reported no pain relief from *Flexeril*, and insisted that he be prescribed

---

[7]The ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public. (Tr. 191-192).

*Xanax*[8]. Plaintiff walked out of the clinic when Dr. Carpenter indicated her reluctance to prescribe *Xanax*. (Tr. 199).

12. Plaintiff returned to Dr. Grandstaff on December 3, 1998, to obtain annual paperwork for public assistance. (Tr. 211). He continued to complain of joint and muscle pain, constipation and diarrhea, migraine headaches and nausea. He was taking no medication. His physical examination was again unremarkable. Dr. Grandstaff indicated that Plaintiff was permanently disabled and unable to complete vocational rehabilitation. He prescribed medication for irritable bowel symptoms and *Trazodone*, an antidepressant.[9] Id. When he returned on January 6, 1999, Plaintiff complained of insomnia, headaches and intermittent constipation. Dr. Grandstaff altered the dosages of Plaintiff's medications, recommended increased exercise and asked Plaintiff to return in one month. (Tr. 210).

13. Plaintiff did not seek further medical care until August 6, 1999, when he was evaluated by Carl Thomas, M.D., at a different clinic. (Tr. 238). Plaintiff complained of chronic headaches, fatigue, myalgias, and alternating constipation and diarrhea. He denied any benefit from prior use of antidepressants and pain medication. Again, Plaintiff's physical examination was benign. Dr. Thomas prescribed *BuSpar*[10] and initiated lab work to determine the cause of his bowel symptoms. On August 20, 1999, Plaintiff reported that *BuSpar* had lessened his anxiety. (Tr. 236). Mental status examination conducted on that day indicated normal mood, no unusual thought processes expressed and good insight and judgment. Dr. Thomas indicated that Plaintiff's symptoms of anxiety and

---

[8] Xanax is an anti-anxiety medication, and can cause drug dependency. 1999 Physicians' Desk Reference at 2516-2521.

[9] Dorland's Illustrated Medical Dictionary at 1736 (28th ed.1994).

[10] BuSpar is an anti-anxiety medication. 1999 Physicians' Desk Reference at 823-825.

6

headache were responding to treatment. By October 1999, Dr. Thomas had completed work up of Plaintiff's bowel complaints, and diagnosed mild pancreatic insufficiency treatable with medication. (Tr. 223-228). On November 23, 1999, Plaintiff complained of right hip pain. (Tr. 220). No physical examination was recorded. Dr. Thomas increased Plaintiff's dosage of *Buspar*, and added *Prozac*[11]. He also referred Plaintiff to Dr. Daniel Junck, an internist, for work-up of his many complaints, including headache and body aches. (Tr. 219).

14.     Dr. Junck examined Plaintiff on January 7, 2000. (Tr. 216-217) After taking a detailed history he conducted a physical examination, which again was benign. He diagnosed chronic headaches, irritable bowel syndrome, and chronic musculoskeletal pain. Dr. Junck prescribed *Imitrex* and *Cardizem* for Plaintiff's headache and ordered an MRI. The MRI found no acute intracranial process. (Tr. 252). Plaintiff declined medication for his musculoskeletal pain. (Tr. 217).

**III.    Plaintiff's testimony.**

15.     In written materials submitted with his application for benefits, Plaintiff indicated that he suffered from headaches, diarrhea, depression, anxiety, nightmares, tiredness, and the inability to hold a job (Tr. 104). He indicated that he was unable to work because of pain, mental anguish, anxiety, paranoia and lack of motivation (Tr. 98), but that he had always worked to meet his financial obligations. (Tr. 103, 115). He stated that he had no recreational activities or social contacts, only did household chores that he had to do to live, and didn't drive, indicating he had no license. (Tr. 107).

16.     Plaintiff testified that he suffered from tension, anxiety, nauseousness, lack of motivation, migraine headaches, muscle and joint pain, obsessive thinking, insomnia and severe arthritis. (Tr. 43-

---

[11]Prozac is an anti-depressant. 1999 Physicians' Desk Reference at 924-928.

44, 51, 54-57). He stated he would rather go to the soup kitchen and relax all day than work and be in pain, then go home and be dead tired and not able to do anything. (Tr. 54). He stated that BuSpar had helped a lot initially, but that he was considering discontinuing it at the time of his administrative hearing because it was causing disorientation and memory impairment. (Tr. 52). He had stopped other prescription medication because of side affects (Tr. 57). He tried vocational rehabilitation, taking a nurse's aide course in 1998 or 1999, but had dropped the class because his symptoms got bad. (Tr. 51). He treats his condition with hours of meditation daily. (Tr. 56-57). He does limited cooking, no housework and has no activities outside the home. (Tr. 56-58).

17. He also discussed his prior legal problems, indicating that he had been arrested in 1990 for drunken driving in Nevada, that he jumped bail and was arrested seven years later in Alaska trying to get a fake passport. He also stated he had used his dead brother's identity so that he wouldn't get caught. (Tr. 46-47).

**IV. Testimony of the Medical Expert**

18. Jill Bottrell, Ph.D., testified at the administrative hearing. The ALJ did not rely upon, or even mention, her testimony. Accordingly, it will not be considered in this appeal.

**V. The ALJ's Decision**

19. The ALJ found that Plaintiff has severe affective disorder and personality disorder, but no severe physical impairment; that Plaintiff's mental disorder does not rise to listing level severity; that Plaintiff's testimony is not credible, and that he retained the residual functional capacity for simple unskilled work at all exertional levels. The ALJ adopted the findings of the state agency physician in assessing the severity of Plaintiff's mental impairment. (Tr. 24). The ALJ then applied the Medical-Vocational Guidelines and found that Plaintiff was not disabled.

8

## VI. Issues Presented

20.     Although Plaintiff's submissions to this court are not models of clarity, he appears to challenge the ALJ's decision on the basis that the ALJ misrepresented the evidence, and his decision is not supported by substantial evidence. (Docket No. 1). The Court will also consider whether proper legal principles were applied.

## VII. Analysis

21.     The ALJ examined in detail the medical record, the testimony and Plaintiff's written submissions. Central to the ALJ assessment of Plaintiff's residual functional capacity, was an evaluation of Plaintiff credibility, which he determined was as unreliable for reasons which are adequately supported by the record.[12] Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990) (Credibility determinations are peculiarly the provence of the finder of fact, and will not be upset when supported by substantial evidence.); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (ALJ must set forth specific evidence he relied upon in evaluating the claimant's credibility.).

22.     Plaintiff complains that the ALJ misrepresented the record. However, he does not cite to any specific evidence supporting this claim. I have compared the administrative record with the ALJ decision, and find to misrepresentations of note.

23.     I find the ALJ's decision is supported by substantial evidence to the extent that he found Plaintiff to have no severe physical impairment. Plaintiff's physical complaints are based on his

---

[12]The ALJ pointed to Plaintiff's admitted use of fake names and forged documents, that he had not sought regular health treatment, that he stopped taking medications shortly after they were prescribed without consulting his doctors, and that despite claiming an inability to concentrate, he meditates and reads for several hours each day. (Tr. 14-15).

testimony, unsupported by medical findings. As previously stated, the ALJ's evaluation of Plaintiff's credibility was supported by substantial evidence. In addition, no physician has placed any restrictions on Plaintiff's physical activities, and as noted by the ALJ, Plaintiff's physical infirmities have caused no limitation of function. (Tr. 13).

24. I also find, however, that the ALJ failed to apply proper legal principles in evaluating of Plaintiff's mental impairment. The record establishes that Plaintiff has a mental impairment which limits, to some extent, his mental residual functional capacity. A treating physician, Dr. Grandstaff, felt that Plaintiff's mental impairment was disabling (Tr. 175, 211). The ALJ did not mention Dr. Grandstaff's opinion, or provide any reason for disregarding it. This was error:

> The medical opinion of a claimant's treating physician is entitled to "special weight." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988); Valencia v. Heckler, 751 F.2d 1082, 1088 (9th Cir.1985). The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987) (citations omitted). [footnote omitted] However, the treating physician's opinion on the ultimate issue of disability is not necessarily conclusive. [footnote omitted] The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir.1986). This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. Id. Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing." Montijo, 729 F.2d at 601; Rhodes v. Schweiker, 660 F.2d 722, 723 (9th Cir.1981).

Rodriguez v. Bowen, 876 F.2d 759, 761-762 (9th Cir. 1989).

> A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it. Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987). When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around." Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir.1988). The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled. Frey, 816 F.2d at 513.

Goatcher v. Dep't of Health & Human Serv., 52 F.2d 288, 289-290 (10th Cir. 1995).

10

Although the ALJ and not a treating physician is responsible for examining medical source opinions and making a determination on whether a claimant meets the statutory definition of disability, Castellano v. Dep't. of Health and Human Servs, 26 F.3d 1027, 1029 (10th Cir.1994); 20 C.F.R. §416.927(e)(1), the ALJ is required to discuss significantly probative evidence that he rejects. See Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir.1996); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984).

25. I recognize that the ALJ relied upon the opinions of non-examining agency physicians in evaluating the severity of Plaintiff's mental impairment. However, because the ALJ did not discuss the opinions of Plaintiff's treating physician, it is impossible to determine whether he applied the factors set out in 20 C.F.R. §416.927(d)(2)-(6) in the evaluation of the weight to give any medical opinion.

## VIII. Recommended Disposition

26. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse be granted in part, and that this matter be remanded for additional proceedings including re-evaluation of Plaintiff's mental residual functional capacity and if necessary, testimony by a vocational expert on the impact of Plaintiff's mental impairments on his ability to work within his residual functional capacity. No particular result is dictated; this record does not substantially support a finding of disabled any more than it supports a finding of not disabled.

**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**